Jeffrey T. Murray (ASB # 19223)
SIMS MURRAY, LTD.
2020 North Central Ave., Suite 670
Phoenix, Arizona  85004
Telephone: (602) 772-5503
Fax: (602) 772-5509
jtmurray@simsmurray.com
Attorneys for Defendant Town of Quartzsite

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MARK ORGERON, an individual,<br><br>             Plaintiff,<br><br>v.<br><br>TOWN OF QUARTZSITE, a municipal corporation of the State of Arizona; JOSE LIZARRAGA, in his official capacity as the ostensible mayor of the Town of Quartzsite; BARBARA COWELL, in her official capacity as the ostensible vice mayor and an ostensible member of the Town Council of the Town of Quartzsite; PATRICIA ANDERSON, in her official capacity as a member of the Town Council of the Town of Quartzsite; NORMA JEAN CROOKS, in her official capacity as a member of the Town Council of the Town of Quartzsite; MICHAEL JEWITT, in his official capacity as a member of the Town Council of the Town of Quartzsite; CAROL KELLEY, in her official capacity as a member of the Town Council of the Town of Quartzsite; PATRICIA WORKMAN, in her official capacity as a member of the Town Council of the Town of Quartzsite; and TERRY FRAUSTO, in her official capacity as the Quartzsite Town Clerk,<br><br>             Defendants. | No.  CV 12-1238-PHX-ROS<br><br>**RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

The Town of Quartzsite, and the councilmembers and the Clerk named herein in their official capacity, by and through undersigned counsel hereby respond and object to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

**The Arizona Attorney General Must be Given Notice**

Plaintiff's primary point of attack is aimed at Arizona Revised Statute, Title 9, Section 232 ("A.R.S. §9-232"). Specifically, in his 'demand for relief', Plaintiff seeks a judicial declaration that "the durational residency requirement in A.R.S. §9-232(A) and Town Code §2-1-10(A) violate the Privileged (sic) and Immunities Clause and Due Process Clause of the Fourteenth Amendment of the U.S. Constitution." Pursuant to Rule 5.1(a) of the Federal Rules of Civil Procedure, Plaintiff was required to provide notice of this statutory challenge to the Arizona Attorney General's Office. To date, it is unclear if said notice was ever provided. The Attorney General must be given notice of this matter and the opportunity to appear and defend the state statute. To the extent Plaintiff has failed to provide said notice, this matter should be dismissed pursuant to Rules 12(b)(7) and 19.

**Quo Warranto**

As noted in Plaintiff's motion, Arizona has a specific state statute, based on state law, governing quo warranto actions. Plaintiff's simple challenge is whether he is entitled to take office, and therefore whether the current councilmembers are unlawfully holding or exercising public office. A.R.S. §§12-2041–12-2042. In fact, on or about June 14, 2012, the La Paz County Attorney filed such an action, titled State ex rel. Vederman v. Cowell and Lizarraga. (S-1500-CV-201200082). This state court action should be permitted to proceed as it may moot this matter in its entirety. For example, by bringing the quo warranto action, the County Attorney has necessarily determined that he has reason to believe that the office of the Quartzsite Town Council is being usurped, intruded or unlawfully held.

And although Plaintiff alleges that a state statute violates his rights, irrespective of the sitting councilmembers' refusal to vacate their positions, this claim is only ripe, and only arises on a "live" set of facts, if the County Attorney's quo warranto action is not successful. Then, but only then, would the one-year durational residency requirement of A.R.S. §9-232 need to be addressed.

1

**A.R.S. §9-232 and Town Code §2-1-10 are Valid**

2      It goes without saying that a state statute is presumed constitutional. *In re Boswell*,

3  96 F.2d 239 (9th Cir. 1938).  And, in this matter, A.R.S. §9-232 and Town Code §2-1-

4  10(A) (so far as it applies to Plaintiff), are valid and do not violate the Constitution.  The

5  statute (A.R.S. §9-232) has been the law in Arizona for decades. *See* Civ.Code 1901,

6  §§540, 541.  Additionally, several other similar state statutes have been challenged and

7  upheld throughout the country at both the state and federal levels.

8      Plaintiff specifically complains about the durational residency requirement of

9  A.R.S. §9-232, subsection A.  Interestingly, that statutory subsection seems to do no more

10  than merely adopt the durational residency requirement found in the Arizona Constitution,

11  Art. 4, Pt. 2, §2. (No person shall be a member of the Legislature unless he shall be a

12  citizen of the United States at the time of his election, nor unless he shall be at least

13  twenty-five years of age, and shall have been *a resident of Arizona at least three years*

14  *and of the county from which he is elected at least one year before his election*.)  In turn,

15  the Arizona Constitution appears to have adopted a similar durational residency

16  requirement from the United States Constitution. *See* Article 1, Section 2. (No Person

17  shall be a Representative [of the United States Legislature] who shall not have attained to

18  the age of twenty five years, *and been seven years a citizen of the United States*, and who

19  shall not, when elected, be an inhabitant of that state in which he shall be chosen.)

20      In addition to the plain language of the United States and Arizona Constitutions,

21  courts across the country have addressed this very issue.  For example, in *MacDonald v.*

22  *City of Henderson*, 818 F.Supp. 303, 306 (D.Nev.1993), the Court reviewed a similar one-

23  year durational residency requirement under a rational basis standard.  The Court based its

24  application of the rational basis test on *Clements v. Fashing*, 457 U.S. 957, 966–970, 102

25  S.Ct. 2836, 2845–2847, 73 L.Ed.2d 508 (1981) (plurality opinion ).  Accordingly, "a court

26  must uphold a law so long as it has some rational basis, or as long as it is reasonably

27  related to a legitimate governmental concern. (citation omitted).  In determining this,

28  however, a State is not required to choose the most ineffectual means to achieve its aims."

*Id.*, citing *Clements*, 457 U.S. at 968–69, 102 S.Ct. at 2846–47.  The *MacDonald* Court found that "It cannot be reasonably argued that increasing the potential exposure of candidates to voters and voters' problems to candidates does not have a rational basis. Nor can it be said that the City of Henderson does not have a legitimate interest in potentially ferreting out candidates who are not seriously committed to the community."  Yet, if the durational residency requirement of A.R.S. §9-232 is stricken, Plaintiff will have successfully removed one tool that the State Legislature gave to the electorate to gauge the commitment of would-be councilmembers.

For example, Plaintiff takes great pains in his motion to justify his position as a three year resident of Quartzsite, as opposed to a resident for less than one year.  Plaintiff claims that he not only intended to remain in Quartzsite, but that as part of the community, he is active in local politics. Motion, 8.  However, these claims seem to ring hollow given Plaintiff's continued maintenance of a home, mailing address, and voter registration in Yuma County, not to mention the fact that Plaintiff did not bother to register to vote in La Paz County until after nearly two years in the community, and less than one year before the election; even though there were three local and two statewide elections between his alleged intent to remain in Quartzsite, and the date he actually registered to vote in La Paz County.  Given Plaintiff's apparent reluctance to assimilate and truly become part of the community of Quartzsite, what better way is there for the electorate to truly gauge his commitment?

The Supreme Court of Ohio addressed a similar issue.  In *State v. Summit County Board of Elections*, the Ohio Supreme Court held that a two year durational residency requirement did not violate a purported candidate's Fourteenth Amendment rights. 545 N.E..2d 1256, 59-60 (1989).  Citing *Hatcher v. Bell*, 521 S.W.2d 799, a case from the Supreme Court of Tennessee, the Ohio Court quoted with approval, "The purpose of a residency requirement is to insure the voters the opportunity to become acquainted with the candidate's ability, character, personality, and reputation and, secondarily, to ensure that the candidate have the opportunity to know the customs and mores of the people."

And in *Hankins v. Hawaii*, after analyzing a five year waiting period for running for governor, the Court specifically found that running for public office is not a fundamental right. 639 F.Supp. 1552, 1555 (D.Hawaii 1986). The *Hankins* Court found that the durational residence requirement does not truly penalize the right to travel." *Id.* The court noted that even though an individual must set aside plans to become Governor for five years, this waiting period "cannot seriously be said to constrict the freedom of interstate travel." Additionally, the court found that the relationship between the waiting period and the right to travel was "too attenuated to warrant invocation of the strict standard of scrutiny." *Id.* at 1555-56. Accordingly, a durational residency requirement does not violate the Fourteenth Amendment.

More recently, the New Jersey Supreme Court issued an informative Opinion and detailed analysis on this topic, discussing the history of the durational residency requirement; even distinguishing and limiting Plaintiff's cited authority, *Callaway v. Samson*, 193 F.Supp.2d 783 (D.N.J. 2002) to the specific facts of that case. In *In re Contest of November 8, 2011 General Election of Office of New Jersey General Assembly Election*, 40 A.3d 684 (2012), a challenge was made directly against the durational residency provision of the New Jersey Constitution. Based on its review of numerous state and federal cases from around the country, the New Jersey Supreme Court applied an "intermediate scrutiny" standard to judge the constitutionality of its durational residency requirement. The court applied intermediate scrutiny, as opposed to strict scrutiny, because only intrastate travel was possibly impacted. *Id.*, at 698. This decision to apply an intermediate level of scrutiny was based in part, on *Lutz v. City of York*, 899 F.2d 255 (3rd Cir. 1990).

In applying this standard, the court recognized that the general governmental interests sought to be protected by applying a durational residency requirement are based on three factors: "First, such requirements ensure that voters have time to develop a familiarity with the candidate. Second, they ensure that the candidate can become familiar with the constituency and the issues facing the people to be represented. Third, they

operate as a curb on carpetbagging." *Id.* at 699-700.   The court noted that these are essentially the same or similar interests identified by other courts when considering durational residency requirements. *Id.*   Specifically, the court stated that the one-year residency requirement was a fair and not unduly burdensome period for a new resident candidate to become familiar with the people and issues of the district and, conversely, for the people to become familiar with a new resident in the district. *Id.*   The Court concluded by finding that New Jersey's one-year durational residency requirement "is reasonably and suitably tailored to advance legitimate state interests", which is in accord with the majority of other courts that have considered analogous residency requirements. *Id.* at 703, citing *Beil v. Akron*, 660 F.2d 166, 169 (6th Cir.1981) and *Joseph v. Birmingham*, 510 F.Supp. 1319, 1328, 1336 (E.D.Mich. 1981) (both cases upholding one-year residency requirement to run for city office).

In its opinion, the New Jersey court also quoted with approval, *Gilbert v. State*, 526 P.2d 1131, 1135 (Alaska 1974).  In *Gilbert*, the Alaska Court stated:

> [I]t is most important that electors have a period in which they may become familiar with the character, habits and reputation of candidates for political office. Modern media campaigns and 'packaged' candidates permit political hopefuls to campaign for office with little or no direct contact with the public they seek to serve. It is essential that voters have at least the opportunity to have some direct knowledge of their candidates in order to judge their sincerity and the truth of the claims which these aspirants for public office press forward through the media. It is a minimal requirement at best to ask a candidate to spend one year as a part of the community he hopes to represent in order to satisfy this need.

The New Jersey court also noted that New Jersey Constitution's "inclusion of a reasonable, and minimal, durational residency restriction on who may hold office in the General Assembly of the Legislature constitutes a permissible exercise of state sovereignty under the Federal Constitution." *Id.* at 702.; see also *Brandenburg v. McClellan*, 427 F.Supp. 943, 945 (E.D. Missouri 1977) (a state has the right to make reasonable residency requirements for persons holding office within the state.)

Finally, the New Jersey Court rejected as-applied challenges to the durational residency requirement.   Citing to a recent decision of a federal district court in New

Jersey, the Court was concerned that if as-applied challenges were permitted to go forward, then there would be no uniform standard. *Id*. at 704-05.

Arizona is no different. Requiring one year of residence prior to taking local office ensures that the candidate gets to know the constituency, and the constituency gets to know the candidate. As the district court in Nevada noted, the one-year durational residency requirement ensures that the candidate is truly committed to the community. This always has been, is, and should continue to be the standard in Arizona. Without uniform enforcement of the one-year residency requirement, and permitting factually-intense ad hoc judicial determinations of the residency of a particular candidate, the courts could inadvertently thwart the "equal" part of the equal protection clause. However, one rule, A.R.S. 9-232(A), applied equally to all, ensures as close as practicable, equal application of the law.

**Plaintiff Did Not Reside in Quartzsite**

Plaintiff argues that even if the durational residency requirement is constitutional, the Town misinterpreted his residency. Specifically, Plaintiff cites to the definition of resident in A.R.S. §16-101(B). Relying on the plain language of the statute, Plaintiff summarily claims that he was physically present in Quartzsite and that he intended to remain in Quartzsite. While it is indisputable that Plaintiff's occupation required him to be physically present in Quartzsite for at least part of the year, Plaintiff's intent to remain is not so clear.

For example, although Plaintiff acknowledges moving to Quartzsite in 2009, Arizona Motor Vehicle Division records reveal that he retained both his physical address and his mailing address in Yuma County until 2010, where his wife continued to reside at least through March 30, 2012, when she changed her physical and mailing addresses with the Motor Vehicle Division from Yuma County to Quartzsite. And, although Plaintiff changed his physical address to Quartzsite in 2010, he retained his mailing address in Yuma. In fact, it wasn't until he changed his voter registration on June 28, 2011 that Plaintiff also changed his mailing address to reflect his "residence" in Quartzsite.

Surprisingly, despite Plaintiff's claimed intent to remain in Quartzsite, it appears that approximately three days after the election, on or about May 18, 2012, Plaintiff changed his mailing address back to his post office box in Yuma County.

And, further calling into question his "intent to remain" in Quartzsite, until at least May 21, 2012, six days after the election, Plaintiff listed his Yuma County mailing address as the appropriate address on file with the La Paz County Assessor for tax notifications.  This is the same Yuma County address Plaintiff provided to his landlord upon first arriving in Quartzsite.  It cannot be said clearly enough, throughout his 'residency' in Quartzsite, despite his alleged intent to remain in Quartzsite and become active in local politics, given his failure to change his voter registration it was not until June 28, 2011, that Plaintiff was even eligible to vote in Quartzsite, or La Paz County.  This failure to register resulted in Plaintiff losing the opportunity to participate in no fewer than three local elections: a primary election in March 2010, a runoff election in May 2010 and a recall election in March 2011.

In addition to the definition set forth in A.R.S. §16-101, in determining the residence of a voter, Arizona looks to the criteria set forth in A.R.S. §16-593. *State v. Macias*, 162 Ariz. 316, 318, 783 P.2d 255, 257 (App. 1989).  In *Macias*, the analysis was simple.  Macias was elected mayor of Nogales.  However, because she had lived outside the city of Nogales for many years prior to her election, the County Attorney brought a quo warranto action to have her removed from office.  The Court found that because she resided outside the city, pursuant to Arizona Constitution, Art. 7, §15, she was not eligible to be the mayor.  This Constitutional provision requires that a candidate for elected office be a resident of the municipality in which he seeks to serve.

The *Macias* Court held that "even if intention alone were dispositive, the trial court was not bound to accept defendant's testimony of her intention in the face of the facts that she had lived with her husband outside Nogales for approximately twelve years, had always listed that address as her residence, and had leased her Nogales house to others for over five years before the election. Those facts would surely permit, if not compel, the

8

1    inference that she intended her residence to be where she lived." *Id*.  As set forth in the

2    discussion above, the facts surrounding Plaintiff's residency and intent to remain are

3    equally questionable, and likely necessitate a finding that Plaintiff did not reside within

4    Quartzsite for one year or more prior to the election.

5    **Plaintiff Lacks Standing to Challenge the Mayoral Decision**

6         In order to bring a claim in federal court, a party must have standing.  Article III of

7    the Constitution limits federal jurisdiction to cases and controversies.  At a minimum,

8    Article III requires that a party show that "he personally has suffered some actual or

9    threatened injury as a result of the putatively illegal conduct of the defendant, and that the

10   injury fairly can be traced to the challenged action, and is likely to be redressed by a

11   favorable decision." *Valley Forge Christian College v. Americans United for Separation*

12   *of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758 (1982).  The Court's

13   jurisdiction is limited to hearing those matters in which a party has suffered an injury in

14   fact. *Id*. at 473, 102 S.Ct. at 759.  Quoting its decision in *Sierra Club v. Morton*, 405 U.S.

15   727, 740, 92 S.Ct. 1361, 1368 (1972), the *Valley Forge* Court stated, "The requirement

16   that a party seeking review must allege facts showing that he is himself adversely affected

17   ... does serve as at least a rough attempt to put the decision as to whether review will be

18   sought in the hands of those who have a direct stake in the outcome."  It is not enough to

19   bring a claim under the general theory that the government must be administered

20   according to law. *Id*. at 482-83, 102 S.Ct. at .764

21        Plaintiff brings this suit based on his denial of a seat on the common council.

22   Plaintiff was denied a seat because he was not a resident of the Town for one year or more

23   prior to the election.  The only question Plaintiff has a direct stake in is whether he should

24   be permitted to serve on the Town Council.  Plaintiff has suffered no injury in fact from

25   the results of the mayoral election, nor does Plaintiff have any personal interest in the

26   outcome of that election.  This Court's review and decision regarding the mayoral election

27   would have no impact on Plaintiff.  Accordingly, Plaintiff lacks standing to bring this

28

claim, and this question is moot. *Porter v. Jones*, 319 F.3d 483, 489 (9th Cir. 2003) (A case becomes moot when the … parties lack a legally cognizable interest in the outcome.)

**Plaintiff Lacks Standing to Challenge A.R.S. §9-232**

Plaintiff has failed to set forth an Article III case or controversy.  Namely, Plaintiff alleges that he is a resident of the Town, and has been since 2009. (Complaint, ¶22)  By its very terms, A.R.S. §9-232 only applies to residents that have resided in a municipality for less than one year.  Accordingly, because A.R.S. §9-232 does not apply to Plaintiff, Plaintiff is without standing to challenge the constitutionality of that statute.  Rather, Plaintiff seeks nothing more than an advisory opinion.

As noted above, Plaintiff's actual disagreement is with the Council's determination of his residency, or lack thereof; but not with the plain language of the statute.  For example, if in fact the Council had determined that he was a resident in excess of one year, there would be no conceivable set of facts or legal basis for filing this action.  The only appropriate set of facts to challenge A.R.S. §9-232 would be akin to those fact patterns set forth in the authority from around the country; namely, an applicant for government services or entitlements who admittedly does not or cannot meet the criteria imposed by the government.  Therefore, unless Plaintiff acknowledges that he is not a resident, or until the County's quo warranto action is held to determine that he is not a resident, A.R.S. §9-232 is unassailable on the facts as Plaintiff has pled them.  Plaintiff's claims are premature.  If however, the quo warranto action is successful, then Plaintiff's challenge to A.R.S. §9-232 is moot.  Accordingly, as requested above, this matter should be dismissed, or alternatively stayed to permit the state court action to proceed with a determination of the County's quo warranto action.

**Conclusion**

As set forth herein, Plaintiff lacks standing to bring his claims.  Additionally, he has not and cannot show a likelihood of success on the merits as to the constitutionality, or alleged lack thereof, of A.R.S. §9-232.  In fact, assuming he has standing to bring such an argument, a review of the authority from around the country leads one to inescapably

conclude that Arizona's durational residency requirement is in fact constitutional and must be upheld.

If however a temporary restraining order or preliminary injunction is issued pending the final determination of Plaintiff's residency or claim to office, the citizens of Quartzsite and the governance of the Town will be severely impacted.  For example, if Plaintiff is instilled as a councilmember but it is ultimately determined that he was not a resident for one-year and therefore not qualified to assume his position, what becomes of every unlawful Town act during his tenure?  An injunction is clearly not in the public interest.  Additionally, given the possible, and perhaps likely, confusion that could result from wrongfully removing a sitting councilmember and instilling Plaintiff, on balance, the equities tip in favor of preserving the status quo.  Plaintiff will suffer no irreparable harm. He will merely have to wait for the County's quo warranto action to run its course.

The best way to preserve the status quo pending a final determination of the County's quo warranto action, is for this Court to deny the application for temporary restraining order and preliminary injunction, and allow the sitting Council to remain in place pending a final determination of Plaintiff's right to assume office.

DATED this 15th day of June, 2012.

SIMS MURRAY, LTD.


/s/ Jeffrey T. Murray
Jeffrey T. Murray
2020 North Central Ave., Suite 670
Phoenix, Arizona  85004
Attorneys for Town of Quartzsite

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2012, I electronically transmitted the attached document to the Clerk's office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Kory A. Langhofer
Micheal T. Liburdi
Eric H. Spencer
SNELL & WILMER L.L.P.
One Arizona Center
400 East Van Buren Street, Suite 1900
Phoenix, Arizona 85004-2202
Attorneys for Plaintiff


/s/ Julie Van Roekel