1  Jeffrey T. Murray (ASB # 19223)
   SIMS MURRAY, LTD.
2  2020 North Central Ave., Suite 670
   Phoenix, Arizona 85004
3  Telephone: (602) 772-5503
   Fax: (602) 772-5509
4  jtmurray@simsmurray.com
5  Attorneys for Defendant Town of Quartzsite

6                **IN THE UNITED STATES DISTRICT COURT**

7                    **FOR THE DISTRICT OF ARIZONA**

8

9  MARK ORGERON, an individual,                No. CV 12-1238-PHX-ROS

10              Plaintiff,
                                               **SUPPLEMENTAL BRIEFING IN**
11 v.                                          **RESPONSE TO MOTION FOR**
                                               **TEMPORARY RESTRAINING**
12 TOWN OF QUARTZSITE, a municipal             **ORDER AND PRELIMINARY**
   corporation of the State of Arizona; JOSE   **INJUNCTION**
13 LIZARRAGA, in his official capacity as the
   ostensible mayor of the Town of Quartzsite;
14 BARBARA COWELL, in her official capacity
   as the ostensible vice mayor and an ostensible
15 member of the Town Council of the Town of
   Quartzsite; PATRICIA ANDERSON, in her
16 official capacity as a member of the Town
   Council of the Town of Quartzsite; NORMA
17 JEAN CROOKS, in her official capacity as a
   member of the Town Council of the Town of
18 Quartzsite; MICHAEL JEWITT, in his official
   capacity as a member of the Town Council of
19 the Town of Quartzsite; CAROL KELLEY, in
   her official capacity as a member of the Town
20 Council of the Town of Quartzsite; PATRICIA
   WORKMAN, in her official capacity as a
21 member of the Town Council of the Town of
   Quartzsite; and TERRY FRAUSTO, in her
22 official capacity as the Quartzsite Town Clerk,

23              Defendants.

24        Pursuant to this Court's proposed order based on the initial papers filed herein and

25 the oral argument held on June 19, 2012, the Defendants hereby provide their

26 Supplemental Briefing in response to Plaintiff's Motion for Temporary Restraining Order

27 and Preliminary Injunction.

28

**Younger Abstention Doctrine**

This Court should abstain from hearing this matter under the doctrine set forth in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Younger* abstention is required when state-court proceedings are initiated before any proceedings of substance on the merits have occurred in federal court. *Hawaii Housing Authority v. Midkiff*, 467 US 229, 237-38 (1984). Here, state court proceedings on the quo warranto action were initiated on June 14, prior to any proceedings of substance taking place in this Court.

In *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 83-85 (1975), the Supreme Court stated:

> Where there is an action pending in state court that will likely resolve the state-law questions underlying the federal claim, we have regularly ordered abstention. (citations omitted) Similarly, when the state-law questions have concerned matters peculiarly within the province of the local courts, (citations omitted) we have inclined toward abstention. …
>
> Among the cases that call most insistently for abstention are those in which the federal constitutional challenge turns on a state statute, the meaning of which is unclear under state law. If the state courts would be likely to construe the statute in a fashion that would avoid the need for a federal constitutional ruling <u>or otherwise significantly modify the federal claim, the argument for abstention is strong</u>. (emphasis added) (citations omitted)

As this Court noted at the argument on June 19, 2012, if the La Paz County Attorney's quo warranto action is successful, it is unlikely that this Court would ever be called upon to gauge the constitutionality of A.R.S. §9-232. Abstention under the *Younger* doctrine is appropriate.

**Sufficient State Law Remedy - Quo Warranto**

In *Harris v. Diaz*, 2004 WL 2912888, the Federal District Court for the Southern District of New York addressed the adequacy of a quo warranto action when there was a challenge to a candidate's residency. That federal court found that a quo warranto action was sufficient, even if the process could be lengthy. That Court noted – "where, as here, "a disputed issue of fact" exists, "the proper vehicle for challenging the results and contesting title to the public office of the purported winner is a quo warranto action…"

In the case at bar, there is clearly a disputed question of fact, the residency and length thereof, of the Plaintiff. This disputed fact will be sorted out in the La Paz County quo warranto action. Accordingly, the quo warranto action will, in all likelihood, resolve the pending issue in this court and eliminate the need for this court to hold any further proceedings.

The availability and in fact, the existence of the ongoing quo warranto action in state court should be dispositive of this matter. Specifically, in order to show irreparable injury, Plaintiff must demonstrate that there is no adequate remedy at law. *Northern California Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 105 S.Ct. 459 (1984). The quo warranto action is in fact, an adequate remedy at law.[1]

**Privileges and Immunities Clause – Due Process**:

To the extent Plaintiff urges this Court to find the state statute unconstitutional under the Privileges and Immunities Clause or the Due Process Clause, as opposed to the Equal Protection Clause, the Supreme Court has addressed this issue. Specifically, in determining whether the Privileges and Immunities Clause and Due Process Clause of the 14th Amendment protect one's right to elected office, in *Snowden v. Hughes*, 321 U.S. 1, 6-7, 64 S.Ct. 397 (1944), the Supreme Court, held:

> The protection extended to citizens of the United States by the privileges and immunities clause includes those rights and privileges which, under the laws and Constitution of the United States, are incident to citizenship of the United States, but does not include rights pertaining to state citizenship and derived solely from the relationship of the citizen and his state established by state law. (citations omitted) <u>The right to become a candidate for state office, like the right to vote for the election of state officers,</u> (citations omitted) <u>is a right or privilege of state citizenship, not of national citizenship which alone is protected by the privileges and immunities clause.</u> (emphasis added)

> More than forty years ago this Court determined that an unlawful denial by state action of a right to state political office is not a denial of a right of property ... secured by the due process clause. (citation omitted)

---

[1] In addition to the quo warranto action, Plaintiff had a state law remedy which would have resulted in an expedited ruling on these issues by the state superior court. *See* A.R.S. §16-671 et seq. However, Plaintiff failed to timely pursue that remedy, apparently electing to proceed with this action instead.

Accordingly, if this Court is willing to grant Plaintiff its desired request, namely an analysis under the Privileges and Immunities Clause or the Due Process clause as opposed to an Equal Protection analysis, this matter must be summarily dismissed.  See *Guzman Flores v. College of Optometrists*, 106 F.Supp.2d 212 (D.Puerto Rico 2000).

**The Durational Residency Requirement is Constitutional**

Even if this Court does not abstain, and even if this Court does not find summarily in favor of the Town based on the Privileges and Immunities or Due Process Clause, the durational residency requirement in A.R.S. §9-232 is constitutional.   In *Clements v. Flashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) the United States Supreme Court addressed a provision in the Texas constitution that limited a candidate's right to run for office.  In addressing a provision that prohibited a current elected official of the state from running for the legislature until the term of his current elected position expired, the Court stated:

> Far from recognizing candidacy as a "fundamental right," we have held that the existence of barriers to a candidate's access to the ballot "does not of itself compel close scrutiny." Citing *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972). … Decision in this area of constitutional adjudication is a matter of degree, and involves a consideration of the facts and circumstances behind the law, the interests the State seeks to protect by placing restrictions on candidacy, and the nature of the interests of those who may be burdened by the restrictions.
> 457 U.S. at 963.

In determining the proper standard of review, the Court noted that not all ballot access restrictions require a heightened level of review. *Id*. at 965-66.  A "waiting period" is hardly a barrier to candidacy. *Id*. at 967.  Referring to two prior decisions, the Court stated that a waiting period was an "insignificant interference" for a candidate's access to the ballot, and such insignificant interference would require only a rational predicate. *Id*. at 967-68.

As noted herein below, even if this Court were to apply a strict scrutiny analysis, the courts in *Chimento* and *Sununu*, both of which were affirmed by the Supreme Court, determined that the three principal state interests served by the durational residency

requirement: to ensure that the candidate is familiar with his constituency; to ensure that the voters have been thoroughly exposed to the candidate; and to prevent political carpet bagging, were sufficient to survive "heightened" or "strict scrutiny" analysis. Therefore, it cannot be argued that the three stated purposes would in any way be less persuasive or less effective to survive a rational basis review. A.R.S. §9-232 will survive regardless of what test the Court deems appropriate.[2]

In addition to *Clements*, other courts have addressed a federal constitutional challenge to a state's durational residency requirements for political candidates. *See also Sununu v. Stark*, 420 U.S. 958, 95 S.Ct. 1346, 43 L.Ed.2d 435 (1975), affirming 383 F.Supp. 1287 (D.N.H.1974); and *Chimento v. Stark*, 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973), affirming 353 F.Supp. 1211 (D.N.H.1973).

Like *Chimento*, the *Sununu* Court held that "there is a compelling state interest in prescribing durational residency requirements for those candidates who seek state elective office." *Sununu*, 383 F.Supp. at 1290. Specifically, the Court found that the "State has the power, reserved to it by the Tenth Amendment to the United States Constitution and the compelling interest, to impose eligibility requirements upon those who seek state-elective office. The three principal state interests served by the durational residency requirement are: first, to ensure that the candidate is familiar with his constituency; second, to ensure that the voters have been thoroughly exposed to the candidate; and third, to prevent political carpetbagging." *Id.*, citing *Chimento v. Stark*, 353 F.Supp. at 1215.

The court in *Sununu* addressed an issue similar to a specific line of questioning posed by the Court in the case at bar, namely, "When does the length of a durational residency requirement become constitutionally impermissible?" *Id.* While the *Sununu* court seemed to acknowledge that there may not be any bright line or other form of litmus test, the court did express its concern that any judicial determination of a specific duration

---

[2] Rational Basis – is the legislation rationally related to a legitimate state interest? Heightened Scrutiny – is the legislation substantially related to a legitimate state interest? Strict Scrutiny – is the legislation suitably tailored to serve a compelling state interest? *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249 (1985).

5

would unconstitutionally wade into an area reserved to the States by the Tenth Amendment to the Constitution. *Id*., at 1290-91.

In addressing the equal protection challenge to the New Hampshire Constitutional provision at issue, the court addressed yet another one of this Court's concerns: what test, i.e. what level of scrutiny, should the court apply in reviewing the applicable provision (state statute). In *Sununu*, the decision was written by one judge who applied the "compelling state interest" test. *Id*. at 1291. However, two judges concurred in the decision but wrote a separate concurring opinion challenging the applicable of the "compelling state interest" test. *Id*. at 1292-93. In the concurring opinion, the judges challenged the applicability of "compelling state interest" test on the grounds that a right to run for office is far less of a fundamental right than the right to vote for office. *Id*. at 1291-93. (But the right to vote and the right to seek public office are not synonymous. They are of a different nature and involve different state interests. … The 'right of qualified voters ... to cast their votes effectively … remains inviolate. While an isolated few may be temporarily precluded from seeking the office of (Senator), this cannot be said to adversely affect the democratic election process or the voters' participation therein.)

Therefore, whether the Supreme Court's rational basis test from *Clements* is applied, whether the compelling state interest test from *Sununu* is applied,[3] or whether some intermediate test of heightened scrutiny is applied,[4] A.R.S. §9-232 must survive any analysis. Specifically, even applying a compelling state interest test, the *Sununu* court determined that it was "… unable to state that the seven-year durational residency requirement is not constitutionally 'tailored' to the state's legitimate objectives."

**The Arizona Supreme Court**

In 1973, the Arizona Supreme Court addressed the constitutionality of a one year durational residency requirement prior to running for office. *Triano v. Massion*, 109 Ariz.

---

[3] The *Sununu* court, again relying on *Chimento*, noted that although applicable, the compelling state interest test does not always need to be rigorously applied.

[4] *In re Contest of November 8, 2011 General Election of Office of New Jersey General Assembly Election*, 40 A.3d 684 (2012)

506, 513 P.2d 935 (1973).  In *Triano*, the Arizona Supreme Court was asked to address the constitutionality of Tucson's one-year residency requirement prior to running for city councilman.  The *Triano* Court first noted that municipal elections are matters of local interest and not statewide concern. *Id*. at 508, 513 P.2d at 937.  In echoing national sentiment, the Court also noted that because the right to vote and the right to be a candidate are separate matters, a state "may require that a citizen meet more strict requirements to hold office than he does to vote for those offices." *Id*. See also *Sununu* at 383 F.Supp. at 1291-92.  In *Triano*, the Arizona Court acknowledged reasons why a durational residency requirement is appropriate for candidates, as opposed to voters.  Quoting from the dissent in a California Supreme Court case, the *Triano* Court acknowledged the following:

> … although a residence requirement may be ill-suited as a voter-qualification device, its value as applied to Candidates seems unquestioned.  Any person with rudimentary awareness of issues and candidates can cast his ballot, and an uninformed vote is easily cancelled by an intelligent one.  But voters are not responsible for managing civic affairs and making the day-to-day decisions which municipal officials must face. *Triano*, at 509, 513 P.2d at 938

The *Triano* Court also took specific note of the residency requirements in place for the President of the United States (14 years per U.S. Const., art. II, s 1, cl. 5); a United States Senator (9 years per U.S. Const., art. 1, s 3, cl. 3); a United States Representative (7 years per U.S. Const., art. I, s 2, cl. 2). *Id*.

And finally, the *Triano* Court, apparently applying or at least citing to the three judge federal decision in *Draper v. Phelps, D.C.*, 351 F.Supp. 677 (1972), quoted with approval:

> The State has a compelling interest in preventing frivolous and fraudulent candidacy by persons who have had no previous exposure to the problems and desires of the electorate of a representative district.  The Court knows of its own knowledge that this problem has existed for many years. Absent a durational residency requirement 'carpet bagger' candidates who have no desire, as agents or representatives of the district, genuinely to acquaint themselves with the problems of a representative district and conscientiously strive for the solution thereof in the legislative halls, can be candidates.

The State also has a compelling interest in requiring that those who expect to stand for the office of State Representative take the matter seriously and make plans for their candidacy in advance of the election date. Serious candidates do usually have well-laid plans fashioned over a period of time. *Triano*, at 509, 513 P.2d at 938.

**Plaintiff has No Standing to Challenge the Mayoral Requirements**

Plaintiff was a candidate for the Town Council.   Yet, he seeks to argue the constitutionality of a local ordinance on behalf of a non-party to this action.  As noted in *Clements*, 457 U.S. at 966, "A litigant has standing to challenge the constitutionality of a statute only insofar as it adversely affects his own rights. (citation omitted). "Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." (citation omitted).  Clearly, Plaintiff has no standing to purse the would-be mayor's claim(s).  Additionally, the rationale set forth in Plaintiff's reply suggests only that Plaintiff was willing to work with a new mayor, but unwilling to work with the sitting mayor.  Plaintiff's personal desire to work with one individual over another cannot possibly rise to the level of sufficient individualized harm as to create standing to make a claim on behalf of the would-be mayor.

**Conclusion**

The authority cited herein combined with the authority set forth in the Town's response to the Plaintiff's motion, make it clear that Plaintiff cannot show a likelihood of success on the merits.  Further, mandatory injunctions that alter rather than preserve the status quo, have been historically disfavored.  Finally, the injunction sought by Plaintiff is akin to the final relief ultimately available.[5]  Relief in this nature is subject to a heightened burden on Plaintiff.  *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft,* C.A.10 (N.M.) 2004, 389 F.3d 973, certiorari granted 544 U.S. 973, 125 S.Ct. 1846, 161 L.Ed.2d 723, affirmed and remanded 126 S.Ct. 1211, 546 U.S. 418, 163 L.Ed.2d 1017 (movants

---

[5] In this matter, Plaintiff seeks to have a sitting councilmember and mayor removed, while having a new mayor and councilmember installed.  Clearly, this is a change to the status quo.

must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on the modified likelihood-of-success-on-the-merits standard.)

As set forth herein and in the Town's Response, the only way to preserve the status quo is for this Court to deny the application for temporary restraining order and preliminary injunction, and allow the sitting Council to remain in place pending a final determination of Plaintiff's right to assume office as determined in the La Paz County quo warranto action.

DATED this 22nd day of June, 2012.

SIMS MURRAY, LTD.

/s/ Jeffrey T. Murray
Jeffrey T. Murray
2020 North Central Ave., Suite 670
Phoenix, Arizona  85004
Attorneys for Town of Quartzsite

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2012, I electronically transmitted the attached document to the Clerk's office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Kory A. Langhofer
Micheal T. Liburdi
Eric H. Spencer
SNELL & WILMER L.L.P.
One Arizona Center
400 East Van Buren Street, Suite 1900
Phoenix, Arizona 85004-2202
Attorneys for Plaintiff

/s/ Julie Van Roekel