Kory A. Langhofer (#024722)
Michael T. Liburdi (#021894)
Eric H. Spencer (#022707)
SNELL & WILMER L.L.P.
One Arizona Center
400 East Van Buren Street, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: (602) 382-6000
Attorneys for Plaintiffs

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

MARK ORGERON,

Plaintiff,

v.

TOWN OF QUARTZSITE, *et al.*,

Defendants.

No. CV-12-01238-PHX-ROS

**PLAINTIFF'S SUPPLEMENTAL BRIEF CONCERNING LEGAL ISSUES IN COUNT I**

Plaintiff Mark Orgeron ("Orgeron") files this supplemental brief to address the following questions:

1. which level of scrutiny should be applied to the constitutional claims in Count I;
2. whether, applying the appropriate level of scrutiny, the Court should invalidate the Town of Quartzsite's durational residency requirement (the "DRR") *on its face*; and
3. whether, applying the appropriate level of scrutiny, the Court should invalidate the DRR *as applied to Orgeron*.

## I. LEVEL OF SCRUTINY

### a. Strict Scrutiny Applies

Laws burdening the *inter*state right to travel are evaluated under the strict scrutiny standard. *See Saenz v. Roe*, 526 U.S. 489, 515 (1999) ("A state, outside certain ill-defined circumstances, cannot classify its citizens by the length of their residence in the State[.]) (Rehnquist, C.J., dissenting); *Shapiro* v. *Thompson*, 394 U.S. 618 (1969). Although the

Snell & Wilmer L.L.P. LAW OFFICES One South Church Avenue, Suite 1500 Tucson, Arizona 85701-1630 (520) 882-1200

U.S. Supreme Court has never issued an opinion analyzing a DRR for elected office, it has summarily affirmed two decisions evaluating a statewide DRR—and in both instances, the opinions below applied strict scrutiny. *See Sununu v. Stark*, 383 F. Supp. 1287, 1290 (D.N.H. 1974), *summarily aff'd*, 420 U.S. 958 (1975); *Chimento v. Stark*, 353 F. Supp. 1211, 1214 (D.N.H. 1973), *summarily aff'd*, 414 U.S. 802.

Durational residency requirements burdening the *intra*state right to travel must be evaluated under the strict scrutiny standard also. *Howlett v. Salish & Kootenai Tribes*, 529 F.2d 233, 242 (9th Cir. 1976) (applying strict scrutiny to a one-year district-level DRR, and noting that "the vast majority of courts which have considered this issue have applied the compelling governmental interest test"); *see also Wellford v. Battaglia*, 485 F.2d 1151, 1152 (3d Cir. 1973) (applying strict scrutiny to a city-level DRR); *Green v. McKeon*, 468 F.2d 883 (6th Cir. 1972) (applying strict scrutiny to a city-level DRR), *overruling discussed in Akron v. Bell*, 660 F.2d 166, 169 (6th Cir. 1981); *Robertson v. Bartels*, 150 F. Supp. 2d 691, 696 (D.N.J. 2001) (applying strict scrutiny to a one-year district-level DRR); *McKinney v. Kaminsky*, 340 F. Supp. 289, 294 (D. Mid. Ala. 1972) (applying strict scrutiny to a county-level DRR); *Bolanowski v. Raich*, 330 F. Supp. 724, 730 (E.D. Mich. 1971) (applying strict scrutiny to a one-year city-level DRR).

Although there is no fundamental right to ballot access, *Clements v. Fashing*, 457 U.S. 957, 963 (1982), courts consistently hold that strict scrutiny is appropriate when reviewing DRRs for elected office because such laws burden *three* categories of constitutionally protected rights: (1) the right to travel, (2) the right to seek elected office, and (3) the right of voters to elect the candidate of their choosing. *Bullock v. Carter*, 405 U.S. 134, 142-43 (1972); *Bartels*, 150 F. Supp. 2d at 696; *Bolanowski*, 330 F. Supp. at 729.

There are, additionally, two facts in this case that strongly support application of the strict scrutiny standard. First, in this case the DRR was applied only *after* the citizens had cast their ballots, and could not reallocate their votes according to their candidate preferences—so the DRR in this matter has had an unusually profound impact on the right

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

of voters to elect the candidate of their choosing. *See generally Dunn v. Blumstein*, 405 U.S. 330 (1972) (applying strict scrutiny to a burden on the fundamental right to vote).

Second, the DRR at issue in this case—unlike the DRR for members of the Arizona State Legislature, *see* Ariz. Const. art. IV, pt. 2, § 2—was not approved by the voters. Rather, the DRR in this case was passed by the Arizona State Legislature and the very Town Council it protects from electoral competition, without the approval of the voters. This form of electoral protectionism, which limits democratic choices without the consent of the governed, significantly burdens the fundamental right of Town residents to vote for the candidates of their choosing, and recommends strict scrutiny. *See generally id.*

To be sure, some courts have applied a lower level of scrutiny in "right to travel" cases." *See, e.g., Akron*, 660 F.2d at 169 (reviewing a city charter imposing a municipal DRR); *MacDonald v. City of Henderson*, 818 F. Supp. 303, 305-06 (D. Nev. 1993) (same); *Hawaii Boating Assoc. v. Water Transportation Div.*, 651 F.2d 661, 665-66 (9th Cir. 1981) (reviewing a DRR relating to mooring privileges); *Hankins v. Hawaii*, 639 F Supp. 1552, 1556 (9th Cir. 1986) (reviewing a statewide DRR provided in the Hawaii constitution); *In re: Contest of Nov. 8, 2011 General Election*, 40 A.3d 684, 699 (N.J. 2012) (reviewing a legislative district DRR in the New Jersey constitution).[1]

The cases applying a lower level of scrutiny are, however, distinguishable from the case at hand. In *Hawaii Boating*, for example, the DRR burdened only the right to moor boats in certain harbors, and not the right to seek elected office or the fundamental right to elect a candidate of one's choosing. 651 F.2d. at 663. *Akron*, *MacDonald*, *Hankins*, and *In re: Contest*, meanwhile, reviewed DRRs that burdened the right to seek elected office—but the DRRs in question arose in city charters or state constitutions approved or

[1] *Clements v. Fashing*, 457 U.S. 957 (1982), sometimes has been cited for the proposition that DRRs for elected office are not subject to strict scrutiny. *See, e.g., MacDonald*, 818 F. Supp. at 306. The ballot access regulation at issue in *Clements* affected only those individuals who voluntarily sought and won election to office and then decided to leave before their terms were complete, and *Clements* not implicate the right to travel. 457 U.S. at 971-72. In light of those distinctions, a lower level of scrutiny was justified in that case, and its standards cannot be imported into DRR cases.

authorized by the voters at large, and therefore have democratic legitimacy.[2] In this case, by contrast, the DRR at issue was never approved or authorized by the voters at large, and therefore calls for a higher level of judicial scrutiny.

Thus, even if one assumes the cases applying a lower level of scrutiny were rightly decided, the facts of this case are distinguishable and recommend a higher level of scrutiny.

**b. Alternatively, Intermediate Scrutiny Applies**

At the hearing on June 19, 2012, the Defendants explained why, in their view, this Court should not apply strict scrutiny. Significantly, the Defendants did not argue that the Court should apply a standard that is less exacting than intermediate scrutiny and, instead, relied heavily on a DRR case applying intermediate scrutiny. *See In re: Contest* , 40 A.3d at 699.

If the Court accepts the Defendants' argument as to the level of scrutiny, the Court should apply the form of intermediate scrutiny formulated by the Third Circuit for intrastate travel cases. Under that formulation, laws burdening the right to "localized intrastate movement" must be "narrowly tailored to meet significant city objectives." *Lutz v. City of York*, 899 F.2d 255, 267, 269 (3d Cir. 1990); *see also Callaway v. Samson*, 193 F. Supp. 2d 783, 786 (D.N.J. 2002) (applying the *Lutz* standard to a one-year ward-level DRR).

The traditional articulation of intermediate scrutiny is, of course, slightly different than its expression in *Lutz*. *See Wengler v. Druggists Mutual Inc. Co.*, 446 U.S. 142, 150 (1980) (requiring a law to "serve important governmental objectives" through means that

[2] *See* Akron City Charter § 28, *available at* http://library.municode.com/index.aspx?clientId=16028 (indicating that the DRR at issue in *Akron* was "[a]pproved by voters [on] Sept. 12, 1967); The Constitution of the State of Nevada, *available at* http://leg.state.nv.us/Const/NvConst.html#Art8Sec8 (indicating that "at the 1924 general election" Nevada voters authorized the legislature to create the city charter containing the DRR at issue in *MacDonald*); Constitution of the State of Hawaii, *available at* http://hawaii.gov/lrb/con/ (summarizing the voter-approved adoption and amendments to the Hawaii constitution, including the DRR at issue in *Hankins*); John E. Bebout & Joseph E. Harrison, *The Working of the New Jersey Constitution*, 10 W. & M. L. Rev. 337, 342 (1968) (describing the process by which the voters approved the 1947 New Jersey constitutional convention, which gave rise to the DRR at issue in *In re: Contest*).



Snell & Wilmer L.L.P. LAW OFFICES One South Church Avenue, Suite 1500 Tucson, Arizona 85701-1630 (520) 882-1200

Snell & Wilmer L.L.P. LAW OFFICES One South Church Avenue, Suite 1500 Tucson, Arizona 85701-1630 (520) 882-1200

are "substantially related to the achievement of those objectives"); *In re: Contest*, 40 A.3d at 699 (requiring a DRR burdening candidacy to be "reasonably and suitably tailored to advance legitimate state interests"). Specifically, the *Lutz* formulation requires narrow tailoring, whereas the traditional articulation of intermediate scrutiny does not.

The traditional formulation of the intermediate scrutiny standard would not be appropriate here, however, because the DRR at issue in this case (a) burdens not only the right to travel, but also the right to seek elected office and the right of voters to select the candidate of their choosing; and (b) was adopted by the legislative branch without the direct approval of the voters whose choices it restricts. In light of these facts, if this Court does not apply strict scrutiny, it should adopt the *Lutz* formulation of intermediate scrutiny.

## II. FACIAL CHALLENGE

### a. Strict Scrutiny

Under strict scrutiny, the DRR in this case is unconstitutional on its face.

Even if the government has a compelling interest in ensuring knowledgeable voters, knowledgeable candidates, and genuine ties to the community, the DRR in this case is not narrowly tailored to advance that interest. The DRR is underinclusive; long-term residents who are reclusive and ignorant of local issues and personalities, and who are not well known in the community, are permitted to run for office. The DRR is also overinclusive; all new residents are prohibited from running for office even if they, by virtue of having previously lived in the Town or previously served in local government elsewhere, would be very well qualified to administer Town affairs. *See McKeon*, 468 F.2d at 885; *Wellford*, 485 F. Supp. at 1152; *Bolanowski*, 330 F. Supp. at 730-31.

Although the defendants can point to some decisions upholding intrastate DRRs under the strict scrutiny standard, the facts in those cases differ materially from the facts in this case. In the two cases that upheld DRRs under the strict scrutiny standard and were summarily affirmed by the U.S. Supreme Court, the DRRs applied to "the highest elective offices in the State." *Chimento*, 353 F. Supp. at 1212, 1216; *see also Sununu*, 383 F.

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

Supp. at 1289. The U.S. Supreme Court has held, however, that "[i]n approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters." *Bullock*, 405 U.S. at 143. Thus, where a DRR applies to a lower office, for a jurisdiction that is "small in population and area," as in this case or in *Wellford*, 343 F. Supp. at 150, the result is different. Similarly, where it can be shown that a lower elected office is consumed with issues that are "extremely localized," as in the tribal offices at issue in *Howlett*, 529 F.2d at 244, an intrastate DRR may survive strict scrutiny. But where the office at issue is not one of the highest elected offices in a state, and the issues are not "extremely localized" like tribal offices, a DRR cannot withstand strict scrutiny and must be invalidated.

**b. Intermediate Scrutiny**

Under intermediate scrutiny, the DRR in this case fails on its face. As *Calloway* noted,

> [A] one-year residency requirement simply sweeps away all the complex web of interests and connections we know that we share with our neighbors down the street, our co-workers, our relatives in the next town, even with strangers whose faces and stories come to us, often vividly, through newsprint and the television screens.

*Callaway*, 193 F. Supp. 2d at 788.

Importantly, the DRR at issue in this lawsuit is a durational *residency* requirement, and not a durational *habitation* requirement. All the purported goals of an intrastate DRR could be equally satisfied by requiring that an individual *inhabit* (*i.e.*, have a physical presence in) the Town for one year prior to an election—but by going further and requiring *residence* (*i.e.*, both physical presence and intent to remain) within the Town for one year, the DRR exceeds the limits of permissible regulation. The additional requirement of *residence* has very little, if any, connection to the policies ostensibly underlying the DRR.

Because the DRR at issue in this case categorically prohibits all new *residents* from seeking elected office, rather than only all new *inhabitants*, it is not narrowly tailored as

required by the *Lutz* formulation of intermediate scrutiny. For the same reason, the DRR is not "substantially related" or "reasonably and suitably tailored to" the stated purposes of the regulation as required by the traditional formulation of intermediate scrutiny.

Under either the *Lutz* formulation or the traditional formulation, the DRR in this case fails under intermediate scrutiny on its face.

**c. Rational Basis**

Even under a rational basis review, the DRR in this case fails on its face.

A one-year DRR for Town council candidates that allows no exceptions is "so restrictive as to erase any rational relationship to the legitimate State interest of having qualified and knowledgeable candidates." *Antonio v. Kirkpatrick*, 579 F.2d 1147, 1150 (8th Cir. 1978) (invalidating a DRR for the office of Missouri State Auditor under rational basis review). While certain individuals who do not meet the minimum requirements of a DRR may be qualified, or unqualified, to serve in a given elected office, that decision must rest, in the first instance, with the voters. When a legislature takes away all opportunity for Town voters to judge the qualifications of candidates who are new Town residents, without the voters themselves approving such a restriction, the legislature exceeds acts irrationally and any such enactment must be invalidated.

**III. "AS APPLIED" CHALLENGE**

This Court actually need not decide the facial challenge of the DRR. The particular facts of this case show that the DRR in this case, *as applied to Orgeron*, do not pass constitutional muster.

The Town has not disputed that Orgeron has lived in the Town since July 2009. He has taught in the local public schools since July 14, 2009, and through that position has become acquainted with the residents of the Town and local issues. He is currently the Head Teacher at the Town's public elementary school. He owns a home in the Town, and has become involved in local politics. He is registered to vote in the Town, and has campaigned for election to Town Council. And of course, in the 2012 Election which featured very strong voter turnout, and in which the voters were permitted to decide for

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

Snell & Wilmer L.L.P. LAW OFFICES One South Church Avenue, Suite 1500 Tucson, Arizona 85701-1630 (520) 882-1200

themselves which candidates were most qualified—as is customary in a democracy—*Orgeron received more votes than any other candidate for Town Council*.

These facts demonstrate that Orgeron is qualified, both objectively and in the judgment of the voters, to serve on the Town Council.

**a. Strict Scrutiny**

The DRR, which the Town claims prohibits Orgeron from serving on the Town Council, is not narrowly tailored to serve the government's interest in screening out unsuitable candidates. To the extent it excludes from elected office Orgeron, who has the requisite familiarity with local voters and issues and whom the voters judged to be the most qualified candidate for Town Council in the 2012 Election, the DRR is overly broad and therefore not necessary to protect the government's interest in fielding suitable candidates.

Under the strict scrutiny standard, the DRR is unconstitutional as applied to Orgeron.

**b. Intermediate Scrutiny**

In light of his background—ties to the community, familiarity with local issues, and the confidence of Town voters—applying the DRR to Orgeron is not narrowly tailored to serve the government's interests as required by the *Lutz* formulation of intermediate scrutiny. Nor is applying the DRR to Orgeron "substantially related" or "reasonably and suitably tailored to" the stated purposes of the regulation, as required by the traditional formulation of intermediate scrutiny.

Under either the *Lutz* formulation or the traditional articulation of intermediate scrutiny, the DRR is unconstitutional as applied to Orgeron.

**c. Rational Basis**

There is no rational basis for prohibiting the voters from selecting Orgeron to represent them on the Town Council. He has lived in the Town for nearly three years, become familiar with local voters and issues, resides in the Town, and won the trust of local voters. On these facts, applying the DRR to Orgeron in this matter is "so restrictive

as to erase any rational relationship to the legitimate State interest of having qualified and knowledgeable candidates." *Antonio*, 579 F.2d at 1150.

Under the rational basis standard, the DRR therefore fails as applied to Orgeron.

**IV. CONCLUSION**

For the reasons set forth above, Court should grant the Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction as to Count I.

RESPECTFULLY SUBMITTED this 22nd day of June, 2012.

SNELL & WILMER L.L.P.

By *s/ Kory A. Langhofer*

Kory A. Langhofer
Michael T. Liburdi
Eric H. Spencer
One Arizona Center
400 East Van Buren Street, Suite 1900
Phoenix, Arizona 85004-2202
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.

*s/ Lynda Ficarra*

15317046

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200