Kory A. Langhofer (#024722)
Michael T. Liburdi (#021894)
Eric H. Spencer (#022707)
SNELL & WILMER L.L.P.
One Arizona Center
400 East Van Buren Street, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: (602) 382-6000
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MARK ORGERON,<br><br>                        Plaintiff,<br><br>v.<br><br>TOWN OF QUARTZSITE, *et al.*,<br><br>                        Defendants. | No. CV-12-01238-PHX-ROS<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF RE: MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Plaintiff Mark Orgeron ("Orgeron") hereby responds to the supplemental brief filed by the Defendants on June 22, 2012 (the "Supplemental Brief"). This brief addresses the Defendants' arguments in the order they were raised in the Supplemental Brief.

**I.    *YOUNGER* ABSTENTION**

The Defendants first argue that, under *Younger v. Harris*, 401 U.S. 37 (1971), this Court must abstain from reviewing this case because there is a pending *quo warranto* action in La Paz County Superior Court. Supplemental Brief at 2.[1]

Because this Court exists to recognize and defend the rights of litigants, abstention must remain the exception rather than the rule. When "each of an abstention doctrine's requirements are not *strictly met*, the doctrine should not be applied." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148 (9th Cir. 2007) (emphasis added).

In this case, *Younger* abstention is inappropriate because, in three different respects, the requirements of *Younger* abstention are not "strictly met."

---

[1]    Although the issue of *Pullman* abstention had been raised previously, *see* Plaintiff's Reply re: Motion for a Temporary Restraining Order and a Preliminary Injunction (docket no. 21) at 3-5, the Defendants raised *Younger* abstention for the first time in the Supplemental Brief.

First, *Younger* applies only when the party against whom the abstention doctrine is applied has "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 432 (1982). *Younger* does not apply when the party against whom it is invoked is not a party to the pending state action, *Benavidez v. Eu*, 34 F.3d 825, 832 (9th Cir. 1994), and Orgeron has never been a party to the *quo warranto* action. Of course, Orgeron could seek leave of the La Paz County Superior Court to raise his arguments in the *quo warranto* action as *amicus curiae*—but even assuming leave would be granted, which is not certain, status as *amicus curiae* is not sufficient to invoke *Younger* abstention. *Id.* ("*Younger*'s scope is closely circumscribed to parties actually involved in state litigation; even the presence of co-plaintiffs representing identical interests in state proceedings does not extend *Younger* to parties not actually involved in those proceedings. . . . [W]e can find [no case] in which any court has ever granted *Younger* abstention because a state proceeding was ongoing in which the federal party was, not a party, but an *amicus*.").

Second, *Younger* applies to civil proceedings only when there are "ongoing" judicial proceedings in state courts. *Middlesex*, 457 U.S. at 432. In the Ninth Circuit, civil proceedings in state court are not ongoing for purposes of *Middlesex* unless they were pending when the federal lawsuit was initiated. *Gilbertson v. Albright*, 381 F.3d 965, 969 n.4 (9th Cir. 2004); *see also Kitchens v. Bowen*, 825 F.2d 1337, 1341 (9th Cir. 1987). Because this litigation was initiated before the *quo warranto* action was initiated in La Paz County Superior Court*, see* Plaintiff's Reply re: Motion for a Temporary Restraining Order and A Preliminary Injunction (docket no. 21) ex. 13 (reflecting a filing date of June 14, 2012), there are no state actions that are "ongoing" within the meaning of *Middlesex*. *Younger* therefore cannot be applied to these proceedings.[2]

---

[2] The Defendants argue that a state action is "ongoing" so long as it was initiated before any "proceedings of substance," as discussed in *Hicks v. Miranda*, 422 U.S. 332, 349 (1975). *Hicks* involved a criminal proceeding in state court, however, and the Ninth Circuit does not apply the *Hicks* standard to civil cases. *See Gilbertson*, 381 F.3d at 969 n.4 (relying on the filing date of the federal action in a civil case); *Kitchens*, 825 F.2d at 1341 (same). Moreover, even if the *Hicks* standard applied in this case, there were "proceedings of substance" in this case before the *quo warranto* action was filed. Specifically, on June 11, 2012, Orgeron filed a complaint and motion for a preliminary

1       Third, even if *Younger* were applicable in this case, this Court should proceed
2 because this case involves "extraordinary circumstances." *Baffert v. Cal. Horse Racing*
3 *Bd.*, 332 F.3d 613, 621 (9th Cir. 2003).  The situation in the Town is dire—perhaps even
4 unparalleled in the United States.  The voters' duly elected representatives have been
5 excluded from office by their political rivals, and unelected individuals are purporting to
6 exercise the powers of office.  While the *quo warranto* action may resolve this situation
7 sometime down the road, that action is (a) proceeding very slowly with little possibility of
8 a speedy hearing or judgment; (b) is before a local court, with elected judges, *see* Ariz.
9 Const. art. VI, § 12(A), and therefore is less trusted by the plaintiff to resolve this matter
10 in a neutral matter; and (c) raises primarily factual issues, such as Orgeron's "intent to
11 remain" in the Town, and not the constitutional issues pending before this Court.  This
12 Court is far better suited to adjudicate this matter because it can promptly and fairly
13 resolve the dispute, in a neutral forum far removed from the local political intrigue, and
14 address all the factual questions and constitutional arguments in one consolidated action.
15 This case therefore presents extraordinary circumstances justifying variance from the
16 *Younger* doctrine.

     **II.**    **INSUFFICIENT REMEDY AT LAW**

18       The Defendants next argue that, because there is a *quo warranto* action pending in
19 La Paz County Superior Court, Orgeron has an adequate remedy at law and therefore is
20 not entitled to injunctive relief.  Supplemental Brief at 2-3.

21       The *quo warranto* action does not provide an adequate remedy, for two reasons.

22       First, the *quo warranto* remedies are not available to Orgeron directly.  Under
23 Arizona statutes, *quo warranto* remedies are currently available only to government
24 agencies, not Orgeron.  *See* Ariz. Rev. Stat. § 12-2043 (authorizing private *quo warranto*
25 actions only where public *quo warranto* actions are not pending).  To be sure, the county

---

injunction in this case. Attached to and supporting those filings were certified public records, business records accompanied by custodians' certificates, and sworn statements that are sufficient to support a judgment on the merits. Such filings constitute "proceedings of substance"—so even if the *Hicks* standard applies, *Younger* abstention would be inappropriate in this matter.

1    government's *quo warranto* action might ultimately affect Orgeron; for example, if the
2    Town loses the *quo warranto* lawsuit and the La Paz County Superior Court orders the
3    usurping parties to leave office and directs the Town to recognize the right of the Mayor
4    Elect and Orgeron to occupy their elected offices, the judgment in the *quo warranto* case
5    would affect Orgeron. But these remedies are available to the *county* as the plaintiff, not
6    to Orgeron directly. The fact that another party, which Orgeron does not control, might
7    eventually obtain a favorable judgment on a related claim does not mean that *Orgeron* has
8    a remedy at law available to him.

9    Second, even if the *quo warranto* remedies were available to Orgeron directly, they
10   would be inadequate. Orgeron won election to office, and is entitled to exercise the
11   powers of that office. Someone else is illegitimately occupying and exercising the powers
12   of Orgeron's office. The *quo warranto* action is not moving forward expeditiously—
13   counsel for the plaintiff in the *quo warranto* action has confirmed to Orgeron's counsel
14   that a motion for summary judgment will not be filed for weeks, and even then responses
15   and replies and possibly additional discovery will follow—and consequently will not
16   provide a timely and adequate remedy for Orgeron's injury. On the facts in this case, the
17   *quo warranto* action does not represent a serious alternative to injunctive relief.

18   The Defendants rely, however, on *Harris v. Diaz*, 2004 WL 2912888 (S.D.N.Y.
19   Dec. 14, 2004), for the proposition that the availability of a *quo warranto* action presents
20   an adequate remedy at law. On its face, *Diaz* is not particularly authoritative; it is an
21   unpublished case from a trial court located in a different Circuit Court of Appeals.
22   Moreover, even if it were binding precedent, the logic of *Diaz* actually *supports* Orgeron's
23   argument; *Diaz* did not disagree with an earlier court's holding that, in the "very
24   exceptional circumstance[]" of an election challenge for which "no investigation is
25   needed," a *quo warranto* action would be an inadequate remedy due to inevitable delays
26   and the unfairness of "sit[ing] idly and watch[ing] the opposing candidate be sworn in."
27   *Id.* *5. In this case, the parties appear to agree on all the basic facts—*e.g.*, that Orgeron
28   has lived in the Town for nearly three years, teaches school there, owns a house there,

- 4 -

1    represented when he bought the house that it was his primary residence, etc.—but they
2    dispute whether those facts establish Orgeron's "intent to remain" in the Town by a
3    preponderance of evidence.  This is, therefore, one of those "very exceptional
4    circumstances" in which there is "no investigation needed" and a *quo warranto* action
5    would be an inadequate remedy due to delay—even under the logic of *Diaz*.  The
6    Defendants' reliance on *Diaz* is, therefore, misplaced.

  Because Orgeron has no adequate remedy at law, injunctive relief is appropriate.

### III.    STATE VERSUS FEDERAL RIGHTS

The Defendants next argue that the right to seek local elected office, and the right to vote for local candidates, are *state* rights rather than *federal* rights.  Supplemental Brief at 3-4.  In support of this contention, the Defendants rely on *Snowden v. Hughes*, 321 U.S. 1 (1944).

But *Snowden*, the entire basis for the Defendants' argument, is no longer good law. The U.S. Supreme Court has long since rejected its principles. For example, in *Bullock v. Carter*, 405 U.S. 134 (1972), the U.S. Supreme Court relied on the U.S. Constitution to invalidate state ballot access regulations.  And in *Dunn v. Blumstein*, 405 U.S. 330 (1972), the U.S. Supreme Court relied on the U.S. Constitution to invalidate a durational residency requirement for voting rights.  *See also Hunter v. Hamilton County Bd. of Elections*, 635 F.3d 219, 234 (6th Cir. 2011) (listing cases inconsistent with *Snowden*); *Mancuso v. Taft*, 476 F.2d 187, 196 (1st Cir. 1973) (noting that *Snowden* "is a product of an outlived theory of the division of federal and state responsibilities").  *Snowden* is no longer good law, and the U.S. Constitution now protects both the right to run for local office and the right to vote for the local candidate of one's choosing.  *See also* U.S. Const. art. IV, § 4, cl. 1 (guaranteeing "a republican form of government" in the states).

Even if *Snowden* were still good law, its reasoning is distinguishable from the facts in this case.  In concluding that no federal rights were implicated, *Snowden* contemplated only "a state statute [that was] *fair on its face*." 321 U.S. at 8 (emphasis added).  In this case, the durational residency requirement is not fair on its face; it facially burdens

Orgeron's right to intrastate travel. So even if *Snowden* were still good law—and it is not—its analysis would not extend to the facts in this case.

Finally, even if *Snowden* were good law and its reasoning were not distinguishable, Orgeron's complaint is significantly related to, but not exclusively based on, the rights to seek local office and to vote for local candidates. Rather, Orgeron's claims expressly rely on the right to travel—which in turn is protected by the Privileges and Immunities and Due Process Clauses of the Fourteenth Amendment of the U.S. Constitution. *See Saenz v. Roe*, 526 U.S. 489 (1999) (recognizing a federal right to interstate travel); *Johnson v. City of Cincinnati*, 310 F.3d 484, 497 (6th Cir. 2002) (recognizing a right under the U.S. Constitution to local, intrastate travel); *Lutz v. City of York*, 899 F.2d 255 (3d Cir. 1990) (recognizing that the Due Process Clause of the Fourteenth Amendment protects the right to intrastate travel); *King v. New Rochelle Municipal Housing Authority*, 442 F.2d 646, 648 (2d Cir.) (1971) ("It would be meaningless to describe the right to travel between states as a fundamental precept of personal liberty and not to acknowledge a correlative constitutional right to travel within a state."). The idea that Orgeron has not identified a violation of rights protected by the U.S. Constitution is, therefore, not at all credible. Even if the Privileges and Immunities and Due Process Clauses did not protect the right to seek local office or the right to vote for local candidates, the durational residency requirement violates Orgeron's federal right to travel and is, therefore, properly before this Court as a violation of the U.S. Constitution.

## IV. CONSTITUTIONALITY OF THE DURATIONAL RESIDENCY REQUIREMENT: FEDERAL CASE LAW

The Defendants next address the merits of Count I, arguing that the durational residency requirement is constitutional under federal case law. Supplemental Brief at 4-6.

The Defendants rely on three federal cases to support their argument: *Clements v. Flashing*, 457 U.S. 957 (1982); *Sununu v. Stark*, 383 F. Supp. 1287 (D.N.H. 1974), *summarily aff'd*, 420 U.S. 958 (1975); and *Chimento v. Stark*, 353 F. Supp. 1211 (D.N.H. 1973), *summarily aff'd*, 414 U.S. 802. Each of these cases is inapplicable or

1  distinguishable.

2  The Defendants' reliance on *Clements* is incorrect for two reasons. First, although
3  the Defendants implied otherwise,[3] *Clements* simply did not deal with a durational
4  residency requirement. Rather, *Clements* dealt with Texas provisions restricting elected
5  officials' ability to become candidate for other elected offices. 457 U.S. at 960. Second,
6  and more fundamentally, the portion of *Clements* on which the Defendants rely was never
7  controlling law. The Defendants rely entirely on the Equal Protection analysis contained
8  in Parts III and IV of the *Clements* decision, which did not gain majority support on the
9  U.S. Supreme Court. To the contrary, a majority of the Court explicitly rejected that
10 portion of the opinion. *Id.* at 978 n.1 ("I note that a majority of the Court today rejects the
11 plurality's mode of equal protection analysis.") (Brennan, J., dissenting). Thus, this Court
12 should wholly reject the Defendants' *Clements* argument.

13 The Defendants' reliance on *Chimento* and *Sununu* is equally misplaced. Both
14 *Chimento* and *Sununu* address the constitutionality of durational residency requirements
15 appearing in the New Hampshire constitution—and the people of New Hampshire, whose
16 options were limited by the durational residency requirement at issue in *Chimento* and
17 *Sununu*, had ratified the constitutional provisions at issue. Here, however, the durational
18 residency requirement has been imposed on the Town voters, limiting their ability to elect
19 the candidates of their choosing, without their consent. The durational residency
20 requirement in this case therefore presents a significantly greater burden on the rights of
21 the voters, without the consent or ratification of the voters.

22 Furthermore, the durational residency requirements in *Chimento* and *Sununu*
23 applied only to "the highest elective offices in the State." *Chimento*, 353 F. Supp. at 1212,
24 1216 (governor); *see also Sununu*, 383 F. Supp. at 1289 (state senator). In this case, by
25 contrast, the Court is presented with a durational residency requirement for Town Council.
26 This distinction is important; the Supreme Court has held that "[i]n approaching candidate
27 restrictions, it is essential to examine in a realistic light the extent and nature of their

---

[3]  The Defendants state that, "In addition to *Clements*, other courts have addressed . . . a state's durational residency requirements." Supplemental Brief at 5.

- 7 -

impact on voters." *Bullock v. Carter*, 405 U.S. 134, 143 (1972). As other courts have concluded, when a durational residency requirement applies to a lower office, for a jurisdiction that is "small in population and area," the result must be different. *Wellford v. Battaglia*, 485 F.2d 1151, 1151 (3d Cir. 1973); *see also Antonio v. Kirkpatrick*, 579 F.2d 1147, 1150–51 (8th Cir. 1978) (relying on the distinction between the office of Governor and lower offices in striking down a durational residency requirement under rational basis review). The durational residency requirement in this case applies to an office far below that of Governor, and in a town that is small in population and area. This case, then, is more like *Wellford* than *Chimento* or *Sununu*, and the durational residency requirement must be invalidated accordingly.

To their credit, both *Chimento* and *Sununu* apply the correct level of review: strict scrutiny. *Sununu*, 383 F. Supp. at 1290; *Chimento v. Stark*, 353 F. Supp. at 1214. But the first point made by the *Sununu* concurrence was that if strict scrutiny had been rigorously applied, the durational residency requirements in the New Hampshire Constitution would "surely" have been struck down. *Sununu*, 383 F. Supp at 1292. Orgeron agrees; if strict scrutiny is faithfully applied here, the durational residency requirement will be struck down.

Thus, while the Defendants correctly identify the cases that call for this Court to apply strict scrutiny, they fail to correctly apply those cases to the facts.

### V. CONSTITUTIONALITY OF THE DURATIONAL RESIDENCY REQUIREMENT: ARIZONA CASE LAW

After arguing from federal case law, the Defendants argue that the durational residency requirement is constitutional under *Triano v. Maisson*, 109 Ariz. 506, 513 P.2d 935 (1973). Supplemental Brief 6-8.

*Triano* presents two problems for the Defendant's argument. First, although the *Triano* court appears to have applied the proper level of scrutiny,[4] its analysis was

---

[4] *Triano* relied on a case, not previously cited in this matter, that strictly scrutinized and invalidated a durational residency requirement burdening *intra*state travel: *Thompson v. Mellon*, 507 P.2d 628 (Cal. 1973). *See* Supplemental Brief at 7.

1    incomplete. Specifically, although the *Triano* court found that the government had a
2    "compelling interest" in qualified candidates, *see* 109 Ariz. at 509, 513 P.2d at 938,
3    *Triano* did not consider whether the durational residency requirement at issue in that case
4    was narrowly tailored to serve the government's interests. And as Orgeron has discussed
5    in previous filings, *see* Plaintiff's Supplemental Brief Concerning Legal Issues in Count I
6    (docket no. 26) at 5, a durational residency requirement for candidates for local office that
7    admits no exceptions is not narrowly tailored and cannot withstand strict scrutiny. *See*
8    *Wellford v. Battaglia*, 343 F. Supp. 143, 150 (D. Del. 1972).

9          Second, like *Chimento* and *Sununu*, *Triano* can be distinguished on grounds of
10   democratic legitimacy. The durational residency requirement in *Triano* arose in a city
11   charter that had been approved by the public at large. *See* Ariz. Const. art. XIII, § 2
12   (requiring all city charters to be approved by the voters); 109 Ariz. at 508, 513 P.2d at
13   937. Because the durational residency requirement at issue in this case did not appear in a
14   city charter and was never approved by the people at large, but nonetheless restricts the
15   right of the voters to choose freely the politicians representing them in office, the
16   durational residency requirement in this case lacks the democratic legitimacy of the
17   durational residency requirements in *Chimento*, *Sununu*, and *Triano*.

18         In summarizing the reasoning of the *Triano* court, the Defendants also restated
19   their misleading argument that the U.S. Constitution imposes a durational residency
20   requirement for members of Congress. As discussed at the June 19, 2012 hearing, the
21   U.S. Constitution requires congressmen to be long-time citizens of the United States and
22   residents of their districts—but it does not impose a *durational* residency requirement for
23   election to Congress. *See* U.S. Const. art. I, § 2 cl. 2, § 3, cl. 3. While the U.S.
24   Constitution imposes a durational residency requirement on the office of the U.S.
25   President, that requirement burdens neither *inter*state nor *intra*state travel. *See id.* art. II, §
26   1, cl. 5 (allowing residence anywhere in the United States). So while the Defendants offer
27   the text of the U.S. Constitution as justification for the durational residency requirement at
28   issue in this matter, a careful reading shows that the Defendants have mischaracterized the

1  federal precedents badly and overlooked the ways in which they differ materially from the
2  residency requirement in this matter.  The clauses in the U.S. Constitution cited by the
3  Defendant are, on closer review, inapposite.

### VI. STANDING RE: DISQUALIFICATION OF THE MAYOR ELECT

Finally, the Defendants reiterate their argument that Orgeron lacks standing to challenge the disqualification of the Mayor Elect.  Supplemental Brief at 8.

As discussed at the June 19, 2012 hearing, however, Orgeron is not bringing his claims under Count III solely in his capacity as an ordinary Town citizen.  Rather, Orgeron is bringing that claim both in his capacity as an individual who supported and voted for the Mayor Elect during the 2012 Election, *and as member of the Town Council who will work closely with the Mayor Elect* to improve government transparency, utilities service, and local tourism.  Only two people campaigned publicly as committed political allies of the Mayor Elect—and then watched as the Town unlawfully disqualified the Mayor Elect from service, thereby preventing the fulfillment of their campaign promises.  The disqualification of the Mayor Elect therefore has had a very specific and direct impact on Orgeron, as one of two people deprived of the ability to honor his commitments to Town voters, and that injury can be redressed only by restoring the Mayor Elect to elected office.

Because the disqualification of the Mayor Elect has caused Orgeron a substantial and non-generalized injury, and because that injury can be redressed by seating the Mayor Elect in his elected office, Orgeron has standing to challenge the disqualification of the Mayor Elect.  *See generally Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) (holding that "standing is not precluded" for third party claims, and that a plaintiff who demonstrates causation and redressability of a personal injury relating to regulation of a third party will have standing).

### VII. CONCLUSION

For the reasons set forth above, this Court should grant the Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction.

RESPECTFULLY SUBMITTED this 27th day of June, 2012.

SNELL & WILMER L.L.P.

By *s/ Kory A. Langhofer*
Kory A. Langhofer
Michael T. Liburdi
Eric H. Spencer
One Arizona Center
400 East Van Buren Street, Suite 1900
Phoenix, Arizona 85004-2202
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.

*s/ Lynda Ficarra*