IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Mark Orgeron,<br><br>       Plaintiff,<br><br>vs.<br><br>Town of Quartsite, et al.,<br><br>       Defendants. | No. CV-12-1238-PHX-ROS<br><br>**ORDER** |

On July 12, 2012, the Court held a preliminary injunction hearing. Pursuant to the parties' stipulation, that hearing was consolidated with the trial on the merits regarding Counts 1 through 3 of Plaintiff's complaint. As set forth below, Plaintiff is entitled to relief on Count 2 of his complaint but Counts 1 and 3 will be dismissed.

**BACKGROUND[1]**

The town of Quartzsite is located in La Paz County. Prior to July 2009, Plaintiff Mark Orgeron lived in nearby Yuma County. In July 2009, Plaintiff moved into a trailer park in Quartzsite. (Exhibit 1). Plaintiff began employment with the Quartzsite Elementary School District on July 14, 2009. (Exhibit 2). In the fall of 2010, Plaintiff and his wife bought and moved into a house in Quartzsite. (Exhibit 3). In connection with purchasing this house, Plaintiff and his wife executed a deed of trust. A portion of that deed of trust stated Plaintiff and his wife agreed to

---

[1] This background constitutes the Court's factual findings.

1  "occupy, establish, and use" the Quartzsite house as their "principal residence within 60 days" after
2  signing the deed of trust. Plaintiffs and his wife also agreed they would occupy the house as their
3  "principal residence for at least one year after the date of occupancy." (Exhibit 4, § 6). Plaintiff
4  keeps all of his vehicles, clothes, and other personal property in the house in Quartzsite.[2]

5  After relocating to Quartzsite, Plaintiff attempted to register to vote in La Paz County. To
6  do so, Plaintiff went to a Department of Motor Vehicles location in Yuma and changed his address
7  to an address in Quartzsite. The address was changed but there was an error on the zip code.
8  Plaintiff's voter registration was rejected because of the zip code error. Plaintiff did not know about
9  the zip code error and was unaware his voter registration had been rejected. On June 28, 2011,
10 Plaintiff successfully registered to vote in La Paz County. (Exhibit 7).

11  Prior to May 15, 2012, Defendant Jose Lizarraga served as mayor of Quartzsite, Defendant
12 Barbara Cowell served as Vice Mayor and as a member of the Town Council, and Joseph Winslow
13 served as a member of the Town Council. Mr. Lizarraga decided not to run for reelection but Ms.
14 Cowell and Mr. Winslow campaigned to retain their Town Council seats. Plaintiff also campaigned
15 for a seat on the Town Council. At the election held on May 15, 2012, non-party Ed Foster won
16 election as mayor while Plaintiff received the most votes for a seat on the Town Council. (Exhibit
17 8). Non-party Patricia Workman received the second most votes for Town Council. Ms. Cowell
18 and Mr. Winslow received the third and fourth-most votes for Town Council. Because there were
19 only two seats available, Ms. Cowell and Mr. Winslow did not achieve reelection. Quartzsite's code
20 provides authority is transferred "effective as of the date [of the election]."[3] Quartzsite Code § 2-

---

[2] Despite buying the house in Quartzsite, Plaintiff's wife continues to spend a portion of her time at a rental property in Yuma closer to her work.

[3] The language of the Quartzsite code is confusing but it seems to provide for the automatic transfer of power on election day. It states "Council Members shall assume the duties of office at the regularly scheduled Council meeting next following the date of the general election at which, or effective as of the date of which, the Council Members were elected." Quartzsite Code § 2-1-3. Defendants' latest supplemental brief argues state law provides for current officers to continue in place until newly elected individuals are formally recognized as "qualified" and allowed to take their place. The Court need not address the precise timing of when newly elected individuals assume their positions.

- 2 -

1-3.  Thus, as of May 15, 2012 Mr. Foster was entitled to the position of mayor, Plaintiff and Ms. Workman were entitled to seats on the Town Council, and Ms. Cowell and Mr. Winslow were not going to continue as members of the Town Council.

On June 4, 2012, and before the newly elected individuals assumed their positions, the incumbent Mayor and Town Council held a meeting.  At that meeting, Mr. Lizarraga, Ms. Cowell, and Mr. Winslow "purported to exercise the powers of office, and purported to cast votes." (Doc. 19 at 7).  By a vote of 6-1, Mr. Lizarraga, Ms. Cowell, Mr. Winslow, and the other members of the Town Council voted to disqualify Mr. Foster under a provision of the Quartzsite code that prevents an individual who owes money to Quartzsite from serving as a public official.  And by a vote of 5-2, Plaintiff was disqualified from taking his seat on the Town Council based on his alleged failure to satisfy the one-year residency requirement set forth by Arizona law and the Quartzsite code.

Based on the disqualification of Plaintiff and Mr. Foster, Plaintiff filed a three-count complaint against Town of Quartzsite, Mr. Lizarraga, the members of the Town Council, and the Quartzsite Town Clerk.  Plaintiff later filed an amended complaint against the same Defendants.  The amended complaint contained four claims.  First, Plaintiff claimed the one-year residency requirement violated his "right to travel under the Privileges and Immunities Clause and the Due Process Clause of the Fourteenth Amendment of [the] U.S. Constitution." (Doc. 19 at 9).  Second, Plaintiff sought "declaratory and injunctive relief" that Defendants were misapplying the one-year residency requirement of Arizona law.  Third, Plaintiff sought "declaratory and injunctive relief" that disqualification of Mr. Foster as the mayor-elect violated Arizona law.  And fourth, Plaintiff claimed Defendants violated 42 U.S.C. § 1973c by failing to obtain preclearance of the town code provision used to disqualify Mr. Foster.  Plaintiff sought preliminary injunctive relief in the form of an order removing certain members of the Town Council as well as his appointment as a legitimate member of the Town Council.

Shortly after Plaintiff filed his complaint, the La Paz County Attorney filed a *quo warranto*

action in La Paz County Superior Court.[4]  As explained by Defendants, "by bringing the *quo warranto* action, the County Attorney has necessarily determined that he has reason to believe that the office of the Quartzsite Town Council is being usurped, intruded or unlawfully held." (Doc. 18 at 2).  Defendants believe this Court should abstain until the *quo warranto* action is resolved while Plaintiff argues the filing of the *quo warranto* action should not impact this case because "political corruption" will prevent him from adequately defending his rights in the La Paz County Superior Court.

At the start of the preliminary injunction hearing on July 12, 2012, Plaintiff's counsel stated the parties had reached an agreement that:

> on the factual issues of where Mr. Orgeron resides and why he was disqualified from office . . . this hearing should be dispositive.  There's still some factual issues that are particular to the Voting Rights Act in Count 4 that we'll probably resolve through a Motion for Summary Judgment later on.  But [the parties agree] that this hearing should be consolidated with the trial on the merits as to the factual issues in Counts 1 through 3 . . . .

*See* Fed. R. Civ. P. 65(a)(2) (allowing for consolidation of preliminary injunction hearing with trial on the merits).  Based on that agreement, the Court will proceed to a final determination regarding Counts 1 through 3.

**ANALYSIS**

**I. Federal Jurisdiction**

The current complaint contains two claims pursuant to 42 U.S.C. § 1983.  The original complaint, however, contained only one claim under 42 U.S.C. § 1983 based on Plaintiff's alleged federal right to intrastate travel.  Initially, the Court questioned whether the sole § 1983 stated a claim on which relief could be granted.  Of course, the Court has jurisdiction to decide that issue. *See Bollard v. Cal. Province of the Society of Jesus*, 196 F.3d 940, 951 (9th Cir. 1999) ("Any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction, even if that claim is later dismissed on the merits under Rule 12(b)(6).").  But if the sole § 1983 were to be

---

[4] The term "*quo warranto*" refers to "[a] common-law writ used to inquire into the authority by which a public office is held or a franchise is claimed." Black's Law Dictionary 1264 (7d ed. 1999).

1  dismissed, the Court could have exercised its discretion and refused to hear the state-law claims.
2  28 U.S.C. § 1367(c)(3).

3  Now that Plaintiff has added a second § 1983 claim, the path of possibly dismissing the
4  intrastate travel claim and declining jurisdiction on the other claims is not possible. Because the
5  amended complaint clearly raises non-frivolous claims under federal law, the Court has jurisdiction
6  to hear this matter. And due to the two federal claims, supplemental jurisdiction exists regarding
7  the two state-law claims. Even under a cramped view of the "same case or controversy"
8  requirement, the state-law claims qualify for the exercise of supplemental jurisdiction. 28 U.S.C.
9  § 1367(a).

10  **II. Abstention is Not Appropriate**

11  In an attempt to avoid the merits of the disputes, Defendants claim the filing of the *quo*
12  *warranto* action in state court should lead the Court to abstain from hearing this suit. The basis for
13  this argument is *Younger v. Harris*, 401 U.S. 37 (1971). According to Defendants, "*Younger*
14  abstention is required when state-court proceedings are initiated before any proceedings of substance
15  on the merits have occurred in federal court." (Doc. 25 at 2). Defendants are correct regarding the
16  general scope of *Younger* abstention. But Defendants overlook a crucial difference between the *quo*
17  *warranto* action and the present suit.

18  The *quo warranto* action involves some of the same defendants as the present suit but it is
19  undisputed that Plaintiff is not a party in the *quo warranto* action. Plaintiff may be allowed to
20  intervene in that action if he wished to do so, but he is not required to do so nor is there a
21  requirement that the state court allow him to do so if he were to make such a request. The Ninth
22  Circuit has held *Younger* abstention can only be applied against a party "actually involved in state
23  litigation." *Benavidez v. Eu*, 34 F.3d 825, 832 (9th Cir. 1994). Based on Plaintiff's current absence
24  from the *quo warranto* action, *Younger* abstention is not appropriate.

25  In earlier briefing, the parties also addressed the possibility that the Court should abstain
26  under *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941). *Pullman* abstention applies only
27  upon the satisfaction of three criteria. Those criteria are: "(1) the federal plaintiff's complaint
28  requires resolution of a sensitive question of federal constitutional law; (2) the constitutional

- 5 -

1 question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear." *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 879, 888 (9th Cir. 2011). *Pullman* abstention generally is not proper if "there is no uncertain question of state law." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236 (1984). Thus, abstention is not appropriate when the outcome turns on the "facts of the particular case" rather than some uncertainty regarding the governing law. *Pearl Inv. Co. v. City and County of San Francisco*, 774 F.2d 1460, 1465 (9th Cir. 1985).

Here, Defendants have not identified any uncertain question of state law. The parties agree that Arizona law directs how residency is to be defined and the only disagreement appears to be on the factual issues surrounding Plaintiff's residence in Quartzsite. Therefore, *Pullman* abstention is not appropriate.

**III. Plaintiff Was Qualified for Town Council**

In Count 2 of his complaint, Plaintiff claims Defendants misapplied the one-year residency requirement in Arizona law. In particular, Plaintiff claims the factual determination by the Town Council that he was not a resident of Quartzsite was wrong. The parties have not specified whether the Court must conduct a *de novo* inquiry on this issue or if a more deferential review is required. The parties have also not identified Plaintiff's burden of proof. Absent guidance from the parties, the Court will conduct a *de novo* inquiry and use the preponderance of the evidence standard.[5]

Arizona law provides

> [a] person shall not be a member of a city or town council unless, at the time of the election, the person is . . . a qualified elector residing within the city or town at the time of the election, and has resided in the city or town for one year next preceding the election.

A.R.S. § 9-232(A). The statutory definition of "resident" is "an individual who has . . . actual physical presence in the political subdivision, combined with an intent to remain."

---

[5] Based on Defendants' failure to present controverting evidence, the standard of review and burden of proof issues have little impact. That is, even if a more deferential standard of review applied and the burden of proof were higher, Plaintiff would still be entitled to relief.

- 6 -

1  A.R.S. § 16-101(B). The Court admits to some confusion regarding Defendants' decision
2  to disqualify Plaintiff based on these statutes. There can be no serious dispute that Plaintiff
3  had an "actual physical presence" in Quartzsite for close to three years prior to the election.
4  Plaintiff's physical presence is evidenced by employment records, rental records, utility bills,
5  documents connected to the purchase of his home, and Plaintiff's own uncontradicted
6  testimony. Thus, the only possible basis for dispute is whether Plaintiff had an "intent to
7  remain" in Quartzsite.

8  On the issue of intent, Plaintiff testified he formed such an intent not long after he
9  moved to Quartzsite in July 2009. Defendants did not offer *any* evidence casting doubt on
10 Plaintiff's stated intent. In fact, all the evidence supported Plaintiff's testimony. Plaintiff
11 owns a home in Quartzsite and all of his vehicles and personal property are in Quartzsite.
12 Also, Plaintiff's wife testified that she spends certain days of the week in Quartzsite and
13 plans to live there full-time once she retires from her job in Yuma. Plaintiff clearly had an
14 "intent to remain" in Quartzsite at least one year prior to the election.

15 Defendants presumably had *some* basis for determining Plaintiff was not a resident
16 of Quartzsite but Defendants chose not to present the Court with that basis. In short, the
17 Court is left with uncontroverted evidence that Plaintiff was a resident of Quartzsite for more
18 than one year prior to the election. Thus, Plaintiff is entitled to declaratory judgment on
19 Count 2. The parties will be directed to submit a proposed order specifying the precise
20 actions Defendants should be ordered to take to effectuate Plaintiff's success on Count 2.

21 **IV.  Count 1 Will Be Dismissed**

22 Plaintiff's request for a temporary restraining order, motion for preliminary injunction, and
23 supplemental briefing focused on Count 1 and his belief that his federal right to intrastate travel was
24 being infringed by application of the one-year residency requirement. The relief sought in Count
25 1, however, is identical to the relief sought in Count 2. As set forth above, Plaintiff is entitled to
26 relief on Count 2. Therefore, the Court need not address Count 1. *See Northwest Austin Mun.*
27 *Utility Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) (courts should "not decide a constitutional
28 question if there is some other ground upon which to dispose of the case").

**V. Count 3 Will Be Dismissed**

In Count 3, Plaintiff seeks declaratory relief regarding the provision of Quartzsite code that prohibits individuals who owe Quartzsite money from serving as an elected official. The provision at issue prevented Mr. Foster from taking his seat as Mayor. Plaintiff believes he has standing to raise this claim because he "intend[ed] to work closely with [Mr. Foster] to improve public policy in" Quartzsite. (Doc. 19 at 11). By refusing to seat Mr. Foster, Plaintiff's plans to work with Mr. Foster are being thwarted. The Court will dismiss this claim for lack of standing. *Stormans, Inc v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009) (standing may be considered *sua sponte*).

"Standing includes two components: Article III constitutional standing and prudential standing." *Yakima Valley Memorial Hosp. v. Washington State Dept. of Health*, 654 F.3d 919, 932 (9th Cir. 2011). A plaintiff must have both types of standing and the Court need not address both if one type is found lacking. *See Estate of McKinney v. United States*, 71 F.3d 779, 782 (9th Cir. 1995) (court need not address Article III standing if plaintiff lacks prudential standing).

Prudential standing requires the plaintiff "(1) assert his own rights, rather than rely on the rights or interests of third parties; (2) allege an injury that is more than a generalized grievance; and (3) allege an interest that is arguably within the zone of interests protected or regulated by the statute or constitutional guarantee in question." *Hong Kong Supermarket v. Kizer,* 830 F.2d 1078, 1081 (9th Cir. 1987). These requirements are disjunctive, meaning the "[f]ailure to satisfy any of these . . . requirements defeats standing." *Id.* Plaintiff has not satisfied the first or second requirement.

On the first requirement, Count 3 primarily is an attempt to vindicate the rights of Mr. Foster rather than Plaintiff. The main focus of Count 3 is the denial of Mr. Foster's right to sit as Mayor. It is not clear that Mr. Foster wishes to vindicate this right and Mr. Foster would clearly be the preferable individual to bring a challenge regarding this right. *See Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 80 (1978) (noting complications of allowing plaintiff to raise rights of third-party). And on the second

1 requirement, Plaintiff's injury is in large part one shared by all residents of Quartzsite. All 2 residents of Quartzsite have an interest in having the duly elected mayor sit. Plaintiff claims 3 he is suffering more than a generalized grievance because he planned "to work closely with 4 the Mayor Elect to improve public policy in Quartzsite." But this injury is far too tenuous; 5 many individuals in Quartzsite could formulate a substantially similar injury. *See Warth v.* 6 *Seldin*, 422 U.S. 490, 499 (1975) ("generalized grievance" is a harm "shared in substantially 7 equal measure by all or a large class of citizens"). For example, any resident could claim he 8 was being injured because he was not being governed by the duly elected Mayor. 9 Generalized injuries of this type are not sufficient. *See Schlesinger v. Reservists Committee* 10 *to Stop the War,* 418 U.S. 208, 217 (1974) (the "generalized interest of all citizens in 11 constitutional governance" is insufficient for standing purposes). Because Plaintiff's alleged 12 injury is substantially similar to that shared by all residents of Quartzsite, he lacks prudential 13 standing. Count 3 will be dismissed.

14 **VI. Count IV**

15 Count IV appears to have been added to Plaintiff's complaint to ensure the presence 16 of federal jurisdiction. It is unclear whether Plaintiff will still have an interest in pursuing 17 that claim now that he has obtained the relief that most directly impacts him. The Court is, 18 of course, willing to hear the claim but there is serious doubt whether to do so would be a 19 wise use of resources by the Court and the parties. Quartzsite has admitted that it 20 "inadvertently failed to submit" the ordinance for approval. Quartzsite has now done so. 21 (Doc. 36 at 7). Based on this submission, it is unclear why Quartzsite is attempting to 22 enforce the ordinance at this time. Alternatively, if the ordinance were to obtain clearance, 23 it is unclear what relief the Court could grant. The parties will be ordered to confer regarding 24 Count IV and make every effort to settle that claim.

- 9 -

**VII. Summary**

Plaintiff is entitled to relief on Count 2. The parties will be directed to confer and submit a proposed order regarding the appropriate type of relief on that count. Count 1 will be dismissed based on the doctrine of constitutional avoidance and Count 3 will be dismissed due to lack of standing. The parties will be directed to submit a joint status statement regarding Count 4.

Accordingly,

**IT IS ORDERED** no later than July 24, 2012 the parties shall confer and file a joint proposed order setting forth the relief the Court should grant based on Plaintiff's success on Count 2.

**IT IS FURTHER ORDERED** Counts 1 and 3 are **DISMISSED**.

**IT IS FURTHER ORDERED** no later than July 27, 2012 the parties shall file a joint statement regarding Count 4.

DATED this 20th day of July, 2012.

Roslyn O. Silver
Chief United States District Judge